33 C.C.P.A. (Patents)

## In re THACKER.

### Patent Appeals No. 5115.

Court of Customs and Patent Appeals.
March 6, 1946.

BLAND, J., dissenting.

Edward H. Lang, of Chicago, Ill., for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting all of the claims of an application for a patent on "Method of Converting Hydrocarbons into Organic Sulfur Compounds" as unpatentable over the patent to de Simó, 2,187,393, January 16, 1940.

The involved claims read as follows:

"4. Method in accordance with claim 26 in which the catalyst is iron sulfide.

"5. Method in accordance with claim 26 in which the catalyst is cobalt sulfide.

"6. Method in accordance with claim 26 in which the catalyst is nickel sulfide."

"9. Method in accordance with claim 26 in which the catalyst is a sulfide selected from the group consisting of vanadium, manganese, copper, iron, cobalt, nickel, chromium and molybdenum sulfides."

"26. The method of preparing carbon-sulfur compounds which comprises contacting paraffinic hydrocarbon gases with sufficient sulfur vapors to stoichiometrically react with the gases to form mercaptans at a temperature of at least 400° C., at which the sulfur and hydrocarbon gases chemically react, in the presence of a catalyst selected from the group of preformed metal sulfides.

"27. Method in accordance with claim 26 in which the temperature is between approximately 400° and 700° C.

"28. Method in accordance with claim 26 in which the catalyst is supported on a carrier selected from the group of silica gel, alumina gel, pumice and charcoal."

The application, Serial No. 326,963, was filed March 30, 1940 as a continuation in part of a copending application of appellant, Serial No. 177,411, filed December 1, 1937, upon which patent No. 2,309,718, was granted February 2, 1943.

The invention relates to a method of producing organic sulfur compounds, especially carbon-sulfur compounds, by converting hydrocarbons, "particularly low boiling paraffinic hydrocarbons." The process is sufficiently set forth in the claims.

The de Simó patent relates to a process for the production of carbon disulfide from organic compounds and sulfur in a catalytic process.

The examiner in his decision analyzed claim 26 herein and the corresponding disclosure of the de Simó patent. It clearly appears from such analysis that the claim is anticipated by the reference in all respects. The examiner rejected all of the other claims as being met by the same reference.

Appellant concedes that the claims are anticipated by the reference, but presents here, as he did below, his contention that the de Simó patent is antedated by his application Serial No. 177,411, above mentioned. The tribunals of the Patent Office rejected this contention on the ground that the claims here could not have been made in the earlier application for the reason that there was not a disclosure therefor in that application.

The controlling issue before us is whether or not appellant's earlier application supports the claims on appeal. It relates to "a method for converting paraffinic hydrocarbon gases to organic sulfur compounds; to a method for preparing high boiling hydrocarbons from organic sulfur compounds; and to the method of converting low boiling hydrocarbons, particularly low boiling paraffinic hydrocarbons by means of sulfur oxidation into higher boiling hydrocarbons."

In carrying out the process of that invention appellant states that the starting substance may be low boiling sulfur compounds from refinery gases or "methane, ethane, propane or butane, or mixtures thereof." It appears that if the starting material be hydrocarbon gas it is subjected to heat and mixed with sulfur vapors, and then in a reactor the mixture is contacted with a catalyst to convert the hydrocarbons to sulfur compounds, and that for the catalyst "oxides or sulfides of vanadium, manganese, copper, iron, cobalt, nickel, chromium, molybdenum" may be used. The reactor, it is stated, is preferably maintained at a temperature of approximately 400° to 700° C. Appellant contends that such disclosure is sufficient to include the method defined by the involved claims. In that application there were three claims for a method of converting paraffinic hydro-

carbon gases to organic sulfur compounds. They read as follows:

"1. The method of converting paraffinic hydrocarbon gases into organic sulfur compounds which comprises contacting the gases mixed with sulfur vapors at reaction temperature with an oxidation catalyst.

"2. Method in accordance with claim 1 in which the reaction temperature is between approximately 400° and 700° C.

"3. Method in accordance with claim 1 in which the catalyst is a sulfide selected from the group consisting of vanadium, manganese, copper, iron, cobalt, nickel, and chromium and molybdenum sulfides.'"

The examiner required division between those claims and the remaining claims which appear in appellant's patent and which are directed to converting alkyl sulfur compounds into higher boiling hyrocarbons, or to a conversion of paraffinic gases or low boiling hydrocarbons into higher boiling hydrocarbons. The present application includes the divided-out subject matter.

· It was not questioned below, and is admitted in the brief of the Solicitor, that application Serial No. 117,411 discloses each of the steps recited in the appealed claims. The only reason for rejection was that in appellant's prior case carbon disulfide is not specifically mentioned. Appellant concedes that to be true, but contends that because each of the steps recited in the involved claims is disclosed in the earlier case the production of carbon disulfide is necessarily inherent in his process.

As factual proof of such inherency, two affidavits are of record, one by appellant, a skilled research chemist, and one by another skilled research chemist who worked under the direction of appellant. Those affidavits show many tests of appellant's process and state unequivocally that their tests produced carbon disulfide as the chief liquid product of the reaction. The examiner held the affidavits to be irrelevant for the stated reason that "support for claims must be determined from the written disclosure of the application", and stated that it was highly significant that no reference to the production of carbon disulfide was contained in appellant's earlier case.

■ There can be no doubt that appellant's process invariably results in the production of carbon disulfide, since the process of de Simó produces that substance. That is not disputed. Since it is admitted that the earlier application discloses each of the steps recited in the involved claims, carbon disulfide necessarily results from the process of the earlier application. Because that is so, the fact that carbon disulfide is not specifically mentioned in the earlier case cannot call into question the necessary inherency of its production there. Hansgirg v. Kemmer, 102 F.2d 212, 26 C.C.P.A., Patents, 937. The general principle of inherency therein set forth was followed by us in the case of In re Salomon, 136 F.2d 728, 30 C.C.P.A., Patents, 1189, and cases therein cited.

■ While in neither of the opinions below is carbon disulfide held to be without the scope of organic sulfur compounds, it is suggested in the brief of the Solicitor that that broad term does not include carbon disulfide, and therefore that substance should not be considered as being disclosed in the earlier application. To that effect there are cited several chemical publications, and definitions from the Encyclopaedia Britannica, 11th Edition, and Webster's New International Dictionary, both under "Chemistry". Appellant in his reply brief arrives at different conclusions from the Solicitor with respect to those citations. Several chemical publications are cited by counsel for appellant in his brief to sustain his view that carbon disulfide is one of the organic compounds. From an examination of the authorities cited by both parties and other publications examined by us we have arrived at the conclusion that organic chemistry is properly defined in Funk & Wagnalls New Standard Dictionary, 1938 Edition, as the branch of chemistry "devoted to the investigation of carbon and its compounds," as well as in Webster's New International Dictionary, 1940 Edition, as follows: "Organic Chemistry, then, is the chemistry of the hydrocarbons and their derivatives (or, which is almost the same, the chemistry of carbon compounds), whether found in organisms or not, while inorganic chemistry treats of all other compounds and of the elements. Such compounds as the oxides of carbon, the carbides, and the cyanides are assigned sometimes to one, sometimes the other."

These dictionary definitions agree substantially with the one found in Hackh's Chemical Dictionary, 1929, i. e., "That branch of chemistry dealing with carbon compounds or the non-polar compounds." Therefore we are of opinion that carbon disulfide may be properly included within

the particular disclosure made in appellant's earlier application, and for that reason are convinced that the present claims could properly have been made therein.

Since all of the other contentions are subordinate, we do not deem it necessary to discuss them.

For the reasons hereinbefore stated, the decision of the Board of Appeals is reversed.

Reversed.

BLAND, J., dissents.