50 CCPA

**Application of Charles Curtis SIMMONS.**
**Patent Appeal No. 6872.**

United States Court of Customs and Patent Appeals.

Feb. 13, 1963.

1. 130 USPQ 369.

**822**

William J. Stellman, Chicago, Ill. (Verne A. Trask, Indianapolis, Ind., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 16 and 17, the only claims remaining in application Ser. No. 358,846, filed June 1, 1953, for "Spray Coating of Articles."

The invention relates to an apparatus for spraying articles with electrostatically charged coating material. As noted in the specification, the invention is an improvement on the apparatus of appellant's copending application Ser. No. 274,-909, filed March 5, 1952, which matured into Patent No. 2,808,343, issued October 1, 1957.

The claims read:

"16. In an electrostatic coating arrangement comprising a circular edged atomizer mounted for rotation about a substantially vertical axis, means for feeding liquid coating material to a surface of the atomizer, means for rotating the atomizer to flow the coating material to the outer edge thereof for atomization therefrom as a spray of finely divided particles, a grounded conveyor lying in a generally horizontal plane and a plurality of supports each having an article supporting portion spaced perpendicularly from said conveyor each supporting an article for moving the articles in a generally horizontal, curved path surrounding the atomizer and spaced vertically from the conveyor, a source of high voltage connected to the atomizer to create a high electrostatic potential between the atomizer and the surrounding grounded articles electrostatically to deposit the particles on the articles as a coating, *the improvement comprising* a deflecting member, means independent of the rotating atomizer for supporting the deflecting member spaced axially from said atomizer and on the same side thereof as the conveyor and the supports are from the articles, said deflecting member having an outer edge substantially concentric with and parallel to the outer edge of said atomizer, and means for connecting said deflecting member to said high voltage source for maintaining said deflecting member at substantially the same potential as said atomizer to inhibit the deposition of spray particles onto the supports and the conveyor.

"17. Apparatus according to claim 16 in which the deflecting member is a metal member whose outer diameter is substantially the same as that of the atomizer." (Emphasis added.)

The references of record relied on are:

| | | |
|---|---|---|
| Ransburg | 2,658,009 | November 3, 1953. |
| Simmons | 2,808,343 | October 1, 1957. |

The Simmons patent discloses and claims an apparatus for coating a plurality of articles located on article supports attached to a conveyor. The conveyor carriers the articles on the article supports past a rotating disc maintained at high electrical potential which atomizes coating material in an expanding spray from the edge of the disc. The spray is electrostatically charged by the disc and the articles on the conveyor are given a different charge in order to attract the spray. Conveniently, the articles are connected to ground through the article supports and conveyor.

A problem was encountered in operating the apparatus of the Simmons patent in coating the more remote surfaces of the articles which were adjacent to the article supports. Inasmuch as the articles, the supports and the conveyor are all maintained at the same electrical potential (e. g., ground), part of the spray would sometimes be deposited on the article supports rather than the adjacent surface of the article. The problem would be especially acute when the distance to the particular surface to be coated was about the same as the distance to the article support or conveyor, in which case the spray would be attracted in several directions and would not effectively coat the work.

The problem was solved by employing a secondary deflecting electrode bearing the same charge as the atomizing disc and the spray therefrom. Utilizing the principle that like charges repel, the deflecting electrode was so located as to direct the charged spray to the desired surfaces.

In the final rejection, the examiner rejected all of the claims as unpatentable over the *claims* of the Simmons patent in view of the secondary reference of Ransburg. However, the Examiner's Answer does not specifically refer to the claims of the Simmons patent. Instead, the examiner states therein:

"Claims 16 and 17 stand rejected over Simmons in view of Ransburg."

Reference was made by the examiner to the second paragraph of the Simmons patent as a teaching of a secondary electrode. The board, in its opinion, stated that the examiner was in error with respect to the interpretation of the second paragraph of the Simmons patent, and affirmed the rejection referring to what the Simmons patent "discloses and claims."

The appellant contends that the board erred in considering the Simmons patent as a prior art reference because "A man cannot be prior to himself." He argues that the board utilized the entire disclosure instead of just the claims. Appellant does concede, nevertheless, that the Simmons patent "has place in the record only to the extent necessary to fulfill the demand of the law that one may not obtain two patents for the same invention." He takes the position that only the claims of the copending patent may be considered, if it may be considered at all.

The Solicitor argues that these contentions include new arguments not previously presented to the Patent Office and, accordingly, are not entitled to the consideration of this court, citing In re Griner, 287 F.2d 178, 48 CCPA 852; In re Davis, 103 F.2d 922, 26 CCPA 1249, and In re Goldberg, 168 F.2d 527, 35 CCPA 1225. Be that as it may, the Solicitor continues, only the claims were relied upon by the Patent Office.

 Whether or not these arguments have been raised before, the Simmons patent, being a copending patent of appellant himself, may be relied on only for what it claims. We, therefore, find no merit in the Solicitor's contention that the alleged new arguments are not entitled to consideration.

 Nevertheless, it is clear that the examiner, in the final rejection, relied on the Simmons patent only for the subject matter claimed. The only apparent reliance on the specification in the Examiner's Answer was expressly rejected by the board. The board never indicated any reliance on anything in the patent other than what was claimed. Of course, it is proper to look to the disclosure to determine what is claimed. In re Green-

**824**

lee, 222 F.2d 739, 42 CCPA 926. Moreover, we find full correspondence in the claims of the Simmons patent with everything recited in the claims on appeal before the word "improvement." By using the so-called "Jepson" form, employed in Ex parte Jepson, 1917 C.D. 62, 243 O.G. 525, appellant is relying on the subject matter following "improvement" for novelty. The subject matter after the word "improvement" in claim 16 is not present in the Simmons patent disclosure and, of course, is not included in the patented Simmons claims.

■ Where, as here, two applications of the same applicant for closely related subject matter are copending, a patent can properly be granted on each of them only if there is a patentable distinction between their respective claims. In re Greenlee, supra. If two patents are to be granted, there must be two separately patentable inventions. In re Ockert, 245 F.2d 467, 44 CCPA 1024, 1027, and cases there cited.

In the case of In re Ward et al., 236 F.2d 428, 43 CCPA 1007, this court found an applicant's claims unpatentable on the basis of consideration of a prior art patent in combination with the claimed subject matter of a patent having common ownership with the application. In connection with a like question, we have held claims unpatentable on the basis that a modification of the device claimed in the applicant's prior copending patent was obvious, "especially in view of" a prior art reference. In re Ockert, supra.

■ In the present case, the matter of whether Simmons has made a second patentable invention narrows down to the question of whether a person of ordinary skill in the art would find the subject matter of the appealed claims obvious over the subject matter claimed in the Simmons patent in view of Ransburg.

The examiner and the board answered that question affirmatively. The Ransburg patent shows an electrostatic coating apparatus in which a secondary electrode, spaced from the electrostatic spray field, is employed to control fluctuations, irregularities and spreading in the projected electrostatic spray. It illustrates the use of a nozzel or unidirectional spray, whereas the claims under consideration call for "a circular edged atomizer" from which spray is atomized; that is, an omnidirectional spray. The board found this variation in spray means of no moment, stating:

"Ransburg is clearly concerned with the problem of controlling electrostatic sprays, without regard for the particular atomizer which produces the spray, and many of the claims of the patent express the deflecting electrode concept without defining any special form of atomizer. In our opinion, *it would be wholly obvious to a person of no more than ordinary skill in this art to adapt the principles of Ransburg to any electrostatic coating apparatus wherein problems of diffusion of spray are encountered, as in the apparatus of Simmons.*" (Emphasis added.)

The spray is directed horizontally in the claimed apparatus because the atomizer rotates about "a substantially vertical axis" and the spray would depart generally perpendicular to the axis of rotation. The claimed deflecting electrode has "an outer edge substantially concentric with and parallel to the outer edge of said atomizer." In Ransburg, on the other hand, the spray is, in the drawings, directed downwardly along a generally vertical path. The board considered this aspect, and stated:

"* * * As for the particular structural arrangement to effect the desired control, it is noted that the spray of Ransburg is projected vertically and the deflecting electrodes are spaced in a horizontal plane around the atomizing means to prevent horizontal diffusion of the spray. Obviously, if the spray were projected horizontally, as in the Simmons apparatus, it would be advisable to space the deflecting electrodes

in a vertical plane, above and/or below the atomizing means, in order to prevent vertical diffusion of the spray. In essence, Ransburg's arrangement has merely been turned through an angle of 90°. With respect to the shape of the deflecting electrode, appellant has merely followed the suggestion of Ransburg in the sentence bridging columns 7 and 8 of the patent to the effect that the shape of the deflecting electrode should be dictated by the shape of the jet to be controlled. Accordingly, a circular atomizer would call for a circular deflecting electrode."

Appellant argues that the Ransburg patent is concerned with the problem of spray stability to prevent erratic wandering and scattering of the sprayed material, whereas the purpose of the present application is "to alter the direction of movement of coating material particles while in flight." We find no distinction of any patentable significance between the two. In either event, the flight path of sprayed particles is altered by means of a secondary electrode bearing substantially the same charge as the particles being sprayed. The same physical law of like charges repelling is employed. With each deflector, the purpose is to restrict the spray to a portion of the articles to be sprayed. We see no distinction when irregular scattering and uncontrolled spray is deflected *into* a particular pattern or *away from* a conveyor and article support. The attraction of the conveyor and article support would cause "irregular scattering" of the charged spray. It would be obvious to one working in this art to solve the problem of uncontrolled spray in the same manner it was solved in an earlier electrostatic spray apparatus. Relying on the teachings of Ransburg, the deflecting electrode may be shaped to accomplish the desired control. We agree with the board that the limitation of claim 17 merely adapts the contour of the deflecting electrode to the contour of the atomizer in accordance with the suggestion in Ransburg.

We believe that the instant claims do not define an unobvious improvement over the device claimed in the Simmons patent, considered with the teaching of the Ransburg patent.

Even though all of the claims of the patent and of the application might exist side by side in one application without restriction being required, as argued by appellant, they may not exist in two separate patents unless two patentable inventions exist. The mere fact that appellant filed two separate applications in the considered belief that two patentable inventions were present does not entitle him to two patents. Appellant suggests that he is being "penalized" for not consolidating the copending applications. If appellant is penalized, it is his own doing.

For the foregoing reasons, the decision of the Board of Appeals is affirmed.

Affirmed.

SMITH, J., concurs in result only.